| | |
|---|---|
| 1 | Sarah Shapero (Bar No. 281748) |
| 2 | Brooke Brewer (Bar No. 352036)<br>SHAPERO LAW FIRM |
| 3 | 100 Pine St., Ste. 530<br>San Francisco, CA 94111 |
| 4 | Telephone: (415) 273-3504<br>Facsimile: (415) 273-3508 |
| 5 | Attorneys for Plaintiff, |
| 6 | FRANCINE MCGWIRE |

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FRANCINE MCGWIRE, an individual;<br><br>Plaintiff,<br><br>v.<br><br>SPECIALIZED LOAN SERVICING, LLC, a limited liability company; AFFINIA DEFAULT SERVICES, LLC, a limited liability company; THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK AS INDENTURE TRUSTEE FOR CWHEQ REVOLVING HOME EQUITY LOAN TRUST, SERIES 2006-I; a business entity; CRESTLINE FUNDING CORPORATION, a business entity; and DOES 1-50, inclusive;<br><br>Defendants. | Case No.: 5:24-cv-00611<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>**Hearing:**<br>Date: November 4, 2024<br>Time: 9:00 a.m.<br>Crtm: 1 |

## I. INTRODUCTION

Before the Court is Defendant SLS's Motion to Dismiss Plaintiff's Second Amended Complaint. This dispute arises out of a residential loan transaction and Defendant's bad faith conduct related thereto. Plaintiff reasonably believed the loan was forgiven almost 18 years ago, as no collection efforts have been made on the loan since the loan was recorded in 2006. Now, Plaintiff's creditors suddenly appear and seek to imminently foreclose on their home of almost 23 years. For the reasons set forth below, the Court should deny Defendants' Motion to Dismiss.

## II. STATEMENT OF FACTS

Plaintiff is, and at all relevant times mentioned herein was, a resident of RIVERSIDE County, California, and is the rightful and lawful owner of real property commonly known as 5712 Peter Wilks Ct, Eastvale, CA 92880 ("Subject Property.") The property is her personal and principal residence. (SAC ¶ 14.)

On October 11, 2001, Plaintiff purchased the Property. (SAC ¶ 15.)

On September 15, 2006, Plaintiff obtained a 2nd position loan from the beneficiary of the loan, Defendant CRESTLINE, for $81,000.00. (SAC ¶ 16.)

Defendant SLS is the servicer of the 2nd position loan obtained by Plaintiff and, on information and belief, became the servicer after the loan was in a state of default. (SAC ¶ 17.)

Plaintiff wholly stopped receiving monthly statements on the loan from SLS or any other party at any point after acquiring the loan in 2006. At the time, Plaintiff, like many Americans in a similar position, understood this to mean that she no longer owed the outstanding principal balance, nor would any loan be accruing interest. (SAC ¶ 18.)

At some point thereafter, Defendant MELLON became the beneficiary of the loan. (SAC ¶ 19.)

On October 6, 2023, Defendant AFFINIA recorded a Notice of Default on the subject property. (SAC ¶ 20.)

The Notice of Default filed against Plaintiff's Property stated that Plaintiff must pay default amount of $70,814.00 or the Trustee Defendant AFFINIA would foreclose on the Property. (SAC ¶ 21.)

Plaintiff unfortunately was not alone in this experience, as many unsuspecting borrowers now face foreclosure from a junior lien long unheard of. (SAC ¶ 22.)

In April 2023, the Consumer Financial Protection Bureau (CFPB) issued an advisory opinion scolding these servicers. (CONSUMER FINANCIAL PROTECTION BUREAU 12 CFR Part 1006 Fair Debt Collection Practices Act (Regulation F); Time-Barred Debt[1].) The CFPB states,

> "Leading up to the 2008 financial crisis, many lenders originated mortgages to consumers without considering their ability to repay the loans. These practices, which harmed millions of people, included in some cases originating products such as "piggyback" mortgages in which high-interest second mortgages were issued simultaneously with the origination of the first mortgage. One common piggyback mortgage product, known as an 80/20 loan, involved a first lien loan for 80 percent of the value of the home and a second lien loan for the remaining 20 percent of the valuation. Some consumers in these loans found themselves unable to make full payments on their first and second mortgages, and when housing prices began to decline in 2005, refinancing became more difficult.
>
> When a borrower defaults on a second mortgage, the mortgage holder may be able to initiate a foreclosure even if the borrower is current on the first mortgage. However, the second mortgage holder only receives proceeds from the foreclosure sale if there are any funds left after paying off the first mortgage. As a result, many second mortgage holders of piggyback loans, recognizing that a foreclosure would not generate enough money to cover even the first mortgage, charged their defaulted loans off as uncollectible and ceased communicating with the borrowers. Some sold the loans to debt buyers, often for pennies on the dollar. Such sales often occurred unbeknownst to borrowers, who continued to receive no communications regarding the loans. Many borrowers, having not received any notices or periodic statements for years, **concluded that their second mortgages had been modified along with the first mortgage, discharged in bankruptcy, or forgiven**.
>
> In recent years, as home prices have increased and borrowers have paid down their first mortgages, after years of silence, some borrowers are hearing from companies that claim to own or have the right to collect on their long-dormant second mortgages. These companies often demand the outstanding balance on the second mortgage, plus fees and interest, and threaten to foreclose if the borrower does not or cannot pay. The CFPB is concerned about homeowners who survived the 2008 financial crisis **but who are now facing foreclosure threats and other collection activity because of long-dormant second mortgages**. These borrowers are often told that they face a choice between entering into onerous payment plans or losing their homes and the equity they have diligently built since the financial crisis."

The supervisor also presented Plaintiff with a Loan Modification Offer. This offer was extremely unreasonable, as it required a down-payment of $20,000.00. Plaintiff did not accept the offer. (SAC ¶ 24.)

---

[1] https://files.consumerfinance.gov/f/documents/cfpb_regulation-f_time-barred-debt_advisory-opinion_2023-04.pdf

On or about September 18, 2024, a Notice of Trustee's Sale was recorded on the Property. There is now a Trustee's Sale scheduled for December 31, 2024.

Defendants, through substantive and procedural irregularities of the non-judicial foreclosure process, are undertaking a wrongful non-judicial foreclosure of the Subject Property. Because of Defendants' inexplicable delay in collecting, and entire failure to communicate the Loan's status, Plaintiff incurred an enormous debt, which includes penalties and interest on back dues that Plaintiff should never have owed but for Defendants' conduct. Furthermore, Plaintiff incurred the present costs and attorney fees to bring this action. The loan would not be in default and the property would not be in foreclosure if not for Defendants' bad faith tactics. (SAC ¶ 25.)

## III.   ARGUMENT

### A.   Legal Standard on a Motion to Dismiss

The courts have long held a strong policy in favor of determining disputes on the basis of their merits and not on technicalities of pleading rules. Foman v. Davis, 371 U.S. 178, 182 (1962). As such, dismissal is reserved for such cases where it is clear that a cause of action cannot be saved by any amendment. Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir.1996). In considering a motion pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. F.D.I.C., 139 F.3d 696, 699 (9thCir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). To survive a motion to dismiss, a plaintiff need only plead facts sufficient to "state a claim for relief that is plausible on its fact." Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal,129 S.Ct. 1937, 1949 (2009).

A dismissal is only appropriate where the plaintiff fails to state a claim supportable by any cognizable legal theory. Balistreri v. Pacific Police Department, 901 F.2d 696, 699 (9thCir.1990). A complaint need only contain "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. Conley

v. Gibson, 355 U.S. 41, 47 (1957) (abrogated on other grounds by Bell Atlantic Corporation v. Twombly, 550 U.S. at 563 (2007)). For these reasons, dismissal without leave to amend is improper unless it is clear that a complaint could not be saved by any amendment. Schneider v. California DOC, 151 F.3d 1194, 1196 (9thCir. 1998).

In the present case, Plaintiff pled sufficient facts to allege the nature and extent of the wrongful conduct committed by Defendants. These factual allegations are thereafter incorporated by reference into each applicable Cause of Action. Each Cause of Action identifies its particular elements, and the allegations made against Defendants. As such, Plaintiff has sufficiently pleaded allegations to place Defendants on notice of the claims against them and the grounds upon which those claims rest. Because of this, the Motion to Dismiss should be denied or, alternatively, Plaintiff should be granted leave to amend.

**B.     Plaintiff Sufficiently Plead a Violation Civil Code § 2924.17.**

The comprehensive statutory scheme governing non-judicial foreclosures serves to protect a borrower from the wrongful loss of his property.  It provides the creditor/beneficiary with a remedy against a defaulting borrower, but it also protects the debtor/trustor from the wrongful loss of property by providing statutory notice requirements and a right of reinstatement. (Knapp v. Doherty, (Cal. App. 6th Dist. 2004)123 Cal. App. 4th 76, 87.)  There are two purposes for the requirement that a beneficiary provide a notice of default and foreclosure sale. The first purpose is to require the beneficiary to detail the existence of breach prior to invoking the power of sale; the second purpose is to give the trustor notice of the obligations that the beneficiary claims to have been breached. (Anderson v. Heart Fed. Sav., (Cal. App. 3rd Dist. 1989) 208 Cal. App. 3d 202, 214.)  Therefore, a borrower's rights and protections afforded under this code necessarily depend on the lender's compliance with California law regarding notice. (Id at 215 (holding the burden to be on the beneficiary to inform the trustor correctly about the amounts due to reinstate a defaulted loan); Susilo v. Wells Fargo Bank, N.A., (N.D. Cal. 2011) 796 F. Supp. 2d 1177, 1188.)

Cal. Civ. Code § 2924.17(a), one of the newer foreclosure statute incorporated into California's non-judicial foreclosure law, requires the information in a Notice of Default or Notice of Sale to be accurate, complete, and supported by competent and

reliable evidence. Section (b) states that "[b]efore recording or filing any of the documents described in subdivision (a), a mortgage servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information." This statute extends the notice requirements adopted to protect a borrower from the wrongful loss of his property.

On September 26, 2023, a substitution of trustee was recorded on the Property wherein Defendant AFFINIA substituted as the new Trustee (RJN, Ex. 2). On October 6, 2023, Defendant AFFINIA recorded a Notice of Default on the subject property. (SAC ¶ 42) The Notice of Default filed against Plaintiff's Property stated that Plaintiff must pay default amount of $70,814.00 or the Trustee Defendant AFFINIA would foreclose on the Property. (SAC ¶ 43) On September 18, 2024, a Notice of Trustee's Sale was recorded on the Property. After acquiring the loan in 2006, Plaintiff wholly stopped receiving monthly statements on the loan from SLS or any other party.

Plaintiff alleges that Defendant clearly failed to evaluate competent and reliable evidence related to Plaintiff's loan, as demonstrated by the loan file would contain little to no evidence of communications for the loan, no collection efforts, and no periodic statements. In fact, the loan file would have effectively had no information for the loan or regarding the purported default. Therefore, Defendant could not have substantiated the default before proceeding to foreclosure.

Consistent with the three notice requirements under California's non-judicial foreclosure law, Cal. Civ Code § 2924.17 imposes an obligation on the mortgage servicer to "ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default" before taking certain steps to foreclose. Cal. Civ. Code § 2924.17(b); see also Rothman v. U.S. Bank Nat'l Ass'n, 2014 U.S. Dist. LEXIS 57518 (N.D. Cal., Apr. 24, 2014) (allowing borrowers to state a claim based on an incorrect Notice of Default which included inappropriate fees and charges, and rejecting servicer's argument that Civil Code § 2924.17 only applies to robo-signing claims); Penermon v. Wells Fargo Bank, N.A., 47 F. Supp. 3d 982, 997-98 (N.D. Cal., June 11, 2014) (denying servicer's motion to dismiss borrower's CC 2924.17 claim based on servicer's failure to credit her account with accepted mortgage payments, evidence that servicer failed to

substantiate her default); Rahbarian v. JP Morgan Chase, 2014 U.S. Dist. LEXIS 158719 (E.D. Cal., Nov. 10, 2014); Novobilski v. Specialized Loan Servicing, LLC 2022 U.S.Dist. LEXIS 148499 (C.D.Cal., Aug. 16, 2022).

Here, Defendant failed to properly calculate the amount due and owing under the loan before recording a substitution of trustee, a Notice of Default, and a Notice of Trustee's Sale for Plaintiff's home. Plaintiff plainly allege that Defendants misstated the amount owed in the Notice of Default because it included interest which it was prohibited from collecting. The sequence of events at issue in this case were the subject of an Advisory Opinion issued by the CFPB.[2] Therefore, not only are the claims plausible, but the conduct at hand has been explicitly denounced by the primary federal agency charged with overseeing mortgage servicer guidelines.

First, Defendants cite to Lucioni v. Bank of America, N.A., 3 Cal. App. 5th 150, 163 (2016) when arguing that Plaintiff fails to state a claim under Cal. Civ. Code § 2924.17. However, the case at hand can be distinguished from the facts in Lucioni.

In Lucioni, the plaintiff suggested that he could amend his complaint to state a cause of action under section 2924.17, as section 2924.12(a)(1) authorizes injunctive relief for 2924.17, but not for section 2924(a)(6). Because the case concerned whether lenders could be enjoined from foreclosing on a showing that they were not "properly assigned an interest in the deed of trust," a cause of action under section 2924.17 in that case would have been directed at the parts of that section concerned with declarations and the right to foreclose based on interest in a deed of trust. (Lucioni at 158.)

Plaintiff in the instant case is not trying to litigate the right to foreclose based on Defendants' rights in the deed of trust. Civil Code § 2924.17 requires a mortgage servicer to review competent and reliable evidence to in order to substantiate the borrower's default *and* right to foreclose. (Cal. Civ. Code § 2924.17(b). Plaintiff is not challenging the right to foreclose. Rather, Plaintiff is litigating the fact that Defendant did not review competent and reliable information to substantiate the default prior to recording a notice of default or notice of trustee's

---

[2] "CONSUMER FINANCIAL PROTECTION BUREAU 12 CFR Part 1006 Fair Debt Collection Practices Act (Regulation F); Time-Barred Debt", obtained from: https://files.consumerfinance.gov/f/documents/cfpb_regulation-f-time-barred-debt_advisory-opinion_2023-04.pdf

1  sale because the amounts in those notices are inflated. The idea that the provisions of section
2  2924.17 "do not create a right to litigate, preforeclosure, whether the foreclosing party's
3  conclusion that it had a right to foreclose was correct" is clearly only referring to the "right to
4  foreclose." (See Lucioni at 163; Cal. Civ. Code § 1061.) Thus, Lucioni's holding is limeted to
5  whether a borrower cab litigate a servicer's right to foreclose; it does not extend to a borrower's
6  challenge regarding whether the servicer has substantiated the default set forth in the Notice of
7  Default.   As such, Lucioni is distinguishable from the facts here.
8         Defendant next argues that "absence of monthly statements does not
9  necessarily imply a complete lack of reliable and competent evidence in the Loan file." (Motion
10 at 3, lns. 6-8.) However, this is an oversimplification of Plaintiff's position. Moreover, this
11 argument, which is all the statement is at this stage, is simply one theory; it does not necessarily
12 negate Plaintiff's theory implausible. Plaintiff alleges that the loan file was deplete of regular
13 activity or monitoring. This fact is supported by the fact that no contact was attempted with
14 Plaintiff during that time, and no statements or other correspondence were sent to Plaintiff.  The
15 lack of regular correspondence or collection activity is evidence that the servicing file was not
16 maintained in the ordinary course of business which would accurately reflect the status of the file.
17 Moreover, the lack of communication is also evidence that the file was either non-existent or
18 incomplete when the substitution of trustee, the Notice of Default, and the Notice of Trustee's
19 Sale was recorded. As a result, Defendant SLS could not reviewed competent or reliable evidence
20 to substantiate the default before the substitution of trustee was recorded on September 26, 2023,
21 before the Notice of Default was recorded on October 6, 2023, and now before the Notice of
22 Trustee's Sale was recorded on September 18, 2024.Finally, the Twombly plausibility
23 standard does not prevent a plaintiff from pleading facts alleged upon information and belief
24 where the facts are peculiarly within the possession and control of the defendant or where the
25 belief is based on factual information that makes the inference of culpability plausible. The court
26 relaxes pleading requirements where the relevant facts are known only to the defendant. Park v.
27 Thompson, 851 F.3d 910, 914 (9th Cir. 2017); see also Concha v. London, 62 F.3d 1493, 1503
28 (9th Cir. 1995) ("[W]e relax pleading requirements where the relevant facts are known only to the

1  defendant."). Park v. Thompson, 851 F.3d 910, 928 (9th Cir. 2017)

2  Pleading on information and belief is permitted under Fed. R. Civ. P. 9(b) when

3  essential information lies uniquely within another party's control. Bell Semiconductor, LLC v.

4  NXP USA, Inc., 653 F. Supp. 3d 767, 771 (S.D. Cal. 2023)

5       Defendant, as owner and servicer of the loan that initiated foreclosure action would have

6  had access to the files which revealed the glaring issue with the growing loan balance but no

7  monthly statements. Its failure to account for this issue demonstrates a clear violation of Civil

8  Code § 2924.17.

9       Defendant's last argument is legally incorrect and relies on the finding of Lucioni which is

10 inapplicable to this case. Plaintiff is not challenging the right to foreclose under the Deed of Trust.

11 Plaintiff challenges the amount of default and whether Defendant reviewed competent and reliable

12 evidence to substantiate the default indicated in the recorded foreclosure documents before the

13 documents were recorded. These facts permit Plaintiff to bring an action for injunctive relief

14 pursuant to Civil Code § 2924.12(a), which expressly authorizes pre-foreclosure sale injunctive

15 relief for a violation of Civil Code § 2924.17.

     **C.   Plaintiff Sufficiently Plead a Violation of California Business and Professions Code § 17200 et seq.**

17      California's Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or

18 fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal.

19 Bus. & Prof. Code § 17200. An act violates the UCL if it is "unlawful," "unfair" or "fraudulent."

20 Rubio v. Capital One Bank, 613 F.3d 1195, 1203 (9th Cir. 2010). The statute "has a broad scope

21 that allows for 'violations of other laws to be treated as unfair competition that is independently

22 actionable' while also 'sweep[ing] within its scope acts and practices that specifically prescribed

23 by any other law.'" Hauk v. JP Morgan Chase Bank USA, 552 F.3d 1114, 1122 (9th Cir. 2009)

24 (quoting Kasky v. Nike, Inc., 27 Cal. 4th 939, 949 (2002)). Pursuant to this section, there are three

25 varieties of unfair competition-- acts or practices which are unlawful, or unfair, or fraudulent.

26 Berryman v. Merit Prop. Mgmt., Inc., 152 Cal. App. 4th 1544, 1554 (Cal. Ct. App. 2007).

27 "Because section 17200 is written in the disjunctive, a business act or practice need only meet one

28 of the three criteria- unlawful, unfair or fraudulent- to be considered unfair competition under the

UCL." Buller v. Sutter Health 160 Cal.App.4th 981, 986 (2008).  A plaintiff can plead a UCL violation under the "unlawfulness" prong by pleading that a business practice violated a predicate federal, state, or local law. See Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal.4th 163, 180 (1999) (citing State Farm Fire & Cas. Co. v. Superior Court, 1103 45 Cal. App. 4th 1093 (Cal. Ct. App. 1996)).  To assert a UCL claim, a plaintiff must have "'suffered injury in fact and . . . lost money or property as a result of the unfair competition.'" Rubio, 613 F.3d at 1203-04 (quoting Cal. Bus. & Prof. Code § 17204 (alteration in original)).

   To state a claim under the UCL's unfairness prong, a plaintiff must show either (1) "a practice that undermines a legislatively declared policy or threatens competition," or (2) "a practice that has an impact on its alleged victim that outweighs the reasons, justifications, and motives of the alleged wrongdoer." Busalacchi v. Ariz. Pub. Serv. Co., 2012 U.S. Dist. LEXIS 105227, 2012 WL 3069948, at *5 (S.D. Cal. July 27, 2012) (citing Lozano v. AT&T Wireless Servs., Inc., 504 F.3d 718, 736 (9th Cir. 2007)). "Unfair behavior is that which is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" Id. (quoting Bardin v. Daimlerchrysler Corp., 136 Cal. App. 4th 1255, 1260 (2006)).  The fraudulent prong of the UCL is "governed by the reasonable consumer test: a plaintiff may demonstrate a violation by show[ing] that [reasonable] members of the public are likely to be deceived." Rubio, 613 F.3d at 1204.

   As discussed above, Plaintiff's claims are antecedent on the aforementioned violations of California law. In addition, Plaintiff has standing to bring this claim. Plaintiff unequivocally alleges in her Complaint that she has suffered economic injury. By of Defendants' actions or omissions of actions, Plaintiff incurred penalties and interest on back dues Plaintiffs should not have owed but for Defendants' conduct. As a result of Defendants' wrongful conduct, Plaintiff has suffered various injuries according to proof at trial, including but not limited to the imminent loss of her home. Likewise, Plaintiff was injured and suffered actual damages including but not limited to, loss of money and property, loss of reputation and goodwill, and severe emotional distress, according to proof at trial but within the jurisdiction of this Court. Furthermore, Plaintiff

has incurred the present costs and attorney fees to bring this action. Thus, Defendant's argument fails and must be overruled.

### D. Plaintiff Properly Plead a Prayer for Declaratory Relief.

As discussed above, the aforementioned facts and causes of action compel Plaintiff to pray for declaratory relief. As stated previously, Plaintiff contends that Defendants are demanding an amount unauthorized by law. Plaintiff maintains that she was completely in the dark with this loan because she was not receiving monthly statements and pray for a judicial determination as to her rights and obligations.

## IV. CONCLUSION

For the reasons set forth herein, the Court should deny Defendant's Motion to Dismiss, or in the alternative, allow Plaintiff leave to amend to incorporate new facts and organize her legal claims.

DATED: October 15, 2024        Respectfully submitted,

SHAPERO LAW FIRM

*/s/ Sarah Shapero*
Sarah Shapero, Esq.
Brooke Brewer, Esq.
Attorneys for Plaintiff
FRANCINE MCGWIRE